**No. 23-50811**

In the United States Court of Appeals
for the Fifth Circuit

———————————

# United States of America,

Plaintiff-Appellee,

v.

# Charles Ray Lerma,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Western District of Texas

———————————

# Appellant's Opening Brief

———————————

Nelson S. Ebaugh
Nelson S. Ebaugh, P.C.
3730 Kirby Dr., Ste. 1200
Houston, TX 77098
(713) 752-0700

*Counsel for Defendant-Appellant*

## Certificate of Interested Persons

*United States v. Charles Ray Lerma*,
No. 23-50811

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.

1. Charles Ray Lerma, Defendant – Appellant

2. Counsel for Plaintiff – Appellee:
   U.S. Attorney Jaime Esparza, Assistant United States Attorneys Joseph Anthony Mahoney and Brandi Young (district court counsel), and Assistant United States Attorney Joseph H. Gay, Jr. (appellate counsel)

3. Counsel for Defendant – Appellant:
   Nelson S. Ebaugh (appellate counsel)

4. Former Counsel for Defendant – Appellant:
   Victoria Lyn Eckman (district court counsel)

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh

## Statement Regarding Oral Argument

Here, the district court:

1. Procedurally erred by failing to explain its upward variance adequately,

2. Abused its discretion by imposing a substantively unreasonable sentence, and

3. Plainly erred by failing to apply a seven-level reduction for voluntary return under U.S.S.G. § 2P1.1(b)(2).

Defendant-Appellant requests oral argument because it will provide a platform to thoroughly examine these matters and allow the parties to answer any questions the Court may have about the sentencing.

# Table of Contents

Certificate of Interested Persons ...............................................................i

Statement Regarding Oral Argument ....................................................ii

Statement of Jurisdiction...........................................................................1

Statement of the Issues..............................................................................2

Statement of the Case ...............................................................................3

Summary of the Argument .......................................................................7

Argument.......................................................................................................8

I.  Lerma's   sentence   is   procedurally   and   substantively
    unreasonable.......................................................................................8

    A. Because  the  district  court  failed  to  explain  its  upward
       variance  adequately,  Lerma's  sentence  is  procedurally
       unreasonable. ...............................................................................8

    B. Considering  the  totality  of  the  circumstances,  the  district
       court  abused  its  discretion  by  imposing  a  substantively
       unreasonable sentence...............................................................13

II. The district court plainly erred by failing to apply a seven-level
    reduction for voluntary return under U.S.S.G. § 2P1.1(b)(2)...........19

    A. Standard of review ....................................................................19

    B. Discussion ..................................................................................20

Conclusion ...................................................................................................25

Certificate of Service .................................................................................26

Certificate of Compliance.........................................................................27

# Table of Authorities

## Cases

*Gall v. United States,*
   552 U.S. 38 (2007)....................................................................*passim*

*Molina-Martinez v. United States,*
   578 U.S. 189 (2016)..................................................................*passim*

*Rosales-Mireles v. United States,*
   585 U.S. 129 (2018)...............................................................20, 24

*United States v. Blanco,*
   27 F.4th 375 (5th Cir. 2022).....................................................*passim*

*United States v. Bostic,*
   970 F.3d 607 (5th Cir. 2020).....................................................*passim*

*United States v. Chon,*
   713 F.3d 812 (5th Cir. 2013).............................................................11

*United States v. Churchwell,*
   807 F.3d 107 (5th Cir. 2015).............................................................13

*United States v. Cisneros–Gutierrez,*
   517 F.3d 751 (5th Cir. 2008)...............................................................8

*United States v. Johnson,*
   943 F.3d 735 (5th Cir. 2019)..............................................19, 20, 22

*United States v. Mondragon-Santiago,*
   564 F.3d 357 (5th Cir. 2009)...........................................................10

*United States v. Perez-Rodriguez,*
   960 F.3d 748 (6th Cir. 2020).....................................................*passim*

*United States v. Rodriguez-Castro,*
    No. 23-10120, 2023 WL 6444773
    (5th Cir. Oct. 3, 2023) (per curiam) .................................................... 17

*United States v. Sabillon-Umana,*
    772 F.3d 1328 (10th Cir. 2014) (Gorsuch, J.) ..................................... 24

*United States v. Smith,*
    440 F.3d 704 (5th Cir. 2006) .............................................................. 13

*United States v. Torres,*
    856 F.3d 1095 (5th Cir. 2017) ............................................................ 22

**Statutes**

18 U.S.C. § 751(a) ...................................................................................... 4, 14

18 U.S.C. § 3553(a) ................................................................................ *passim*

18 U.S.C. § 3553(a)(1) ............................................................................... 9, 11

18 U.S.C. § 3553(a)(2)(D) .......................................................................... 9, 11

18 U.S.C. § 3553(a)(6) .................................................................................... 14

18 U.S.C. § 3553(c)(2) ...................................................................................... 9

**Sentencing Guidelines**

U.S.S.G. § 2P1.1(a)(1) ................................................................................ 4, 23

U.S.S.G. § 2P1.1(b)(2) ............................................................................ *passim*

U.S.S.G. § 2P1.1(b)(3) ............................................................................... 4, 22

U.S.S.G. § 3E1.1(a) .................................................................................... 4, 23

U.S.S.G. § 4A1.3(a)(2)(B) ................................................................ 17

U.S.S.G. § 4A1.3(a)(2)(E) ................................................................ 18

U.S.S.G. § 5K2.8 ........................................................ 6, 12, 18

U.S.S.G. ch. 5 pt. A ................................................................... 23

## Miscellaneous

U.S. Sentencing Comm'n, *Federal Escape Offenses* (Sept. 2023) ........... 15

## Statement of Jurisdiction

This Court has appellate jurisdiction over the district court's final judgment of conviction and sentence under 28 U.S.C. § 1291. Jurisdiction also lies pursuant to 18 U.S.C. § 3742. Lerma filed his notice of appeal in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure in a timely manner. ROA.43-44, 45-50.

1

## Statement of the Issues

1.    Whether the district court procedurally erred by failing to explain its upward variance adequately.

2.    Whether the district court abused its discretion by imposing a substantively unreasonable sentence.

3.    Whether the district court plainly erred by failing to apply a seven-level reduction for voluntary return under U.S.S.G. § 2P1.1(b)(2).

## Statement of the Case

Charles Ray Lerma was sentenced to 76 months' imprisonment for aiding and abetting the distribution of heroin within 1,000 feet of a housing facility. ROA.115. This sentence was to be served in the custody of the U.S. Bureau of Prisons, followed by six years of supervised release. ROA.115.

Upon release from imprisonment, Lerma was placed on supervised release for a term of six years. ROA.115. While serving his supervised release term, Lerma violated one or more conditions, and his supervised release was revoked. ROA.115. The district court imposed a revocation sentence of 36 months, but no further supervised release. ROA.115.

While serving the 36-month revocation sentence, Lerma was transferred to Dismas Charities, a Residential Reentry Center in Midland, Texas. ROA.115-16. He acknowledged understanding the rules of the center, including that leaving without permission would be considered an escape. ROA.116.

On July 21, 2023, Lerma was discovered missing from his assigned bunk during a head count. ROA.116. Surveillance footage showed him jumping the facility's fence and leaving the premises at approximately

3

9:09 AM. ROA.116. He trespassed on a neighboring property, wandering around both inside and outside the building. ROA.116.

Later that day, local law enforcement found Lerma "attempting [to] re-enter the facility" and took him into custody. ROA.116-17. He was transported to the Midland County Sheriff's Office Detention Center. ROA.117.

A federal grand jury for the Western District of Texas indicted Lerma for escape from custody, in violation of 18 U.S.C. § 751(a). ROA.11-12. Lerma pleaded guilty without a plea agreement. ROA.64.

After the guilty plea, the probation officer prepared a presentence investigation report ("PSR"). ROA.80-99. The PSR calculated Lerma's offense level as follows:

| Calculation | Levels | U.S.S.G. § | Description | Record |
|---|---|---|---|---|
| Base offense level | 13 | 2P1.1(a)(1) | 18 U.S.C. § 751(a) | ROA.83 (PSR ¶ 11) |
| Specific offense characteristic | -4 | 2P1.1(b)(3) | reduction for escape from a non-secure facility | ROA.84 (PSR ¶ 12) |
| Acceptance of responsibility | -2 | 3E1.1(a) | | ROA.84 (PSR ¶ 18) |
| **Total offense level** | 7 | | | ROA.84 (PSR ¶ 19) |

The PSR calculated Lerma's criminal history category as III. ROA.93 (PSR ¶ 39). Because they were too old, the PSR did not count Lerma's 14 misdemeanor convictions. ROA.85-88. Further, the PSR did not count Lerma's juvenile adjudication from 1993. ROA.84-85.

A total offense level of seven and a criminal history category of III produced a Guidelines range of four to 10 months. ROA.97 (PSR ¶ 57). Neither the government nor Lerma objected to the PSR. ROA.100.

At sentencing, the district court found the PSR accurate and adopted it, including the PSR's Guidelines calculations. ROA.70. Defense counsel highlighted Lerma's need for educational training and addiction treatment, and pointed out Lerma's voluntary return after his escape, asking the court to consider these factors. ROA.70-72. When given the opportunity to comment, the prosecutor stated, "Nothing additional to add, Your Honor." ROA.74.

In support of an upward variance, the district court cited certain circumstances. First, it noted Lerma's "three terms of supervised release, none of which he successfully completed" and his theft and escape. ROA.74-75. The court also mentioned "Lerma's criminal history, which is way underrepresented by the category. . . ." ROA.74. Finally, the court

stated that it "believes that to promote respect for the law, provide just punishment, to deter future criminal conduct and protect the public, that a variance is justified." ROA.75.

The court varied upwards by 757% from the middle of the Guidelines range to impose 60 months' imprisonment, the statutory maximum sentence. ROA.74-75. But the court did not address the arguments regarding Lerma's need for educational and addiction treatment, nor did it acknowledge his voluntary return after escaping. ROA.74-78. When defense counsel argued that the sentence was "procedurally and substantively unreasonable," the court simply responded with "Thank you" and ended the sentencing. ROA.77-78.

In the Statement of Reasons form, the district court based its upward variance solely on "extreme conduct" associated with the instant offense but provided no details supporting this conclusion. ROA.103. "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. In other words, extreme conduct is conduct that is "unusually heinous, cruel, brutal, or degrading to the victim." U.S.S.G. § 5K2.8.

Lerma timely appealed. ROA.43-44, 45-50.

## Summary of the Argument

**Procedural Unreasonableness:** The district court failed to adequately explain its reasons for significantly deviating from the sentencing guidelines, which led to a procedurally unreasonable sentence. Specifically, the court imposed a sentence 757% higher than the midpoint of the guideline range without sufficient explanation or consideration of certain section 3553(a) factors such as Lerma's voluntary return and need for educational training and addiction treatment.

**Substantive Unreasonableness:** The sentence is substantively unreasonable because it disproportionately emphasizes Lerma's criminal history and the nature of his offense while overlooking the sentencing factor aimed at avoiding unwarranted disparities among similar defendants.

**Failure to Apply Reduction for Voluntary Return:** The district court plainly erred by not applying a seven-level reduction under U.S.S.G. § 2P1.1(b)(2) for Lerma's voluntary return to custody within the same day of his escape.

## Argument

### I. Lerma's sentence is procedurally and substantively unreasonable.

#### A. Because the district court failed to explain its upward variance adequately, Lerma's sentence is procedurally unreasonable.

##### 1. Standard of review

This Court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C. § 3553(a)] factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). In evaluating procedural reasonableness, this Court reviews the district court's interpretation and application of the Guidelines de novo and its findings of fact for clear error. *See United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

##### 2. Discussion

Here, the district court did not provide an adequate explanation to support its 757% increase from the middle of the Guidelines range.

ROA.74-75. At sentencing, defense counsel highlighted Lerma's need for educational training and addiction treatment, and pointed out Lerma's voluntary return after his escape, asking the court to consider these factors. ROA.70-72. But when it orally pronounced sentence, the court overlooked these statutory sentencing factors. *See* 18 U.S.C. § 3553(a)(1) (history and characteristics of the defendant); § 3553(a)(2)(D) (need for educational training or medical care in the most effective manner). Instead, the court emphasized Lerma's history of recidivism and the circumstances of his offense as reasons for imposing an upward variance. ROA.74-75. When defense counsel challenged the sentence as "procedurally and substantively unreasonable," the district court only responded with "Thank you" and ended the sentencing. ROA.77-78.

If a district court imposes a sentence outside the Guidelines range, it must state on the record "the specific reason for the imposition of a sentence different from that described" in subsection (a)(4). 18 U.S.C. § 3553(c)(2). "This explanation must 'allow for meaningful appellate review and . . . promote the perception of fair sentencing.'" *United States v. Bostic*, 970 F.3d 607, 611 (5th Cir. 2020) (quoting *Gall*, 552 U.S. at 50). The district court "must consider the extent of the deviation and ensure

9

that the justification is sufficiently compelling to support the degree of the variance." *Id.* (quoting *Gall*, 552 U.S. at 50). "Further, 'a major departure should be supported by a more significant justification than a minor one.'" *Id.* (quoting *Gall*, 552 U.S. at 50). "For such a non-Guidelines sentence, a district court must more thoroughly articulate fact-specific reasons for its sentence, and the farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be." *Id.* (cleaned up).

This Court has "held a district court made a procedural error by not adequately explaining the chosen sentence where the only supporting reasons were a recitation of the Guidelines calculation, accompanied by a brief colloquy with defense counsel that did not squarely address the defendant's sentencing arguments, and where the district court overruled the defendant's objection without explanation." *Id.* (citing *United States v. Mondragon-Santiago*, 564 F.3d 357, 363–64, 364 n.5 (5th Cir. 2009)). "Inadequate explanation can include a mere 'passing reference' to the Section 3553(a) factors at the sentencing hearing and in the statement of reasons if not accompanied by some explanation for the

selected sentence or the decision to depart from the advisory range." *Id.* (citing *United States v. Chon*, 713 F.3d 812, 823–24 (5th Cir. 2013)).

The district court here adopted the PSR's Guidelines calculation, which provided a sentence of four to 10 months. ROA.70. In support of an upward variance, the district court mentioned Lerma's history of recidivism and the circumstances of his offense. ROA.74-75. The district court also stated it "believes that to promote respect for the law, provide just punishment, to deter future criminal conduct and protect the public, that a variance is justified." ROA.75. Without elaborating, the district court varied upwards by 757% from the middle of the Guidelines range to impose 60 months' imprisonment, the statutory maximum sentence. ROA.74-75. The district court did not address Lerma's argument about his need for educational and addiction treatment, a factor under § 3553(a)(2)(D), nor did it acknowledge his voluntary return after escaping, a factor under 3553(a)(1). ROA.74-78. When defense counsel argued that the sentence was "procedurally and substantively unreasonable," the court simply responded with "Thank you" and ended the sentencing. ROA.77-78.

In the Statement of Reasons form, the district court based its upward variance solely on "extreme conduct" associated with the instant offense but provided no details supporting this conclusion. ROA.103. "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. In other words, extreme conduct is conduct that is "unusually heinous, cruel, brutal, or degrading to the victim." U.S.S.G. § 5K2.8.

Here, the instant offense involved trespass and the theft of a $200 cell phone. ROA.83 (PSR ¶¶ 5-6). While illegal, such conduct hardly amounts to "extreme conduct" that is "unusually heinous, cruel, brutal, or degrading to the victim." Accordingly, the Statement of Reasons form does not support the upward variance either.

In sum, the sentence here was a 757% increase from the middle of the Guidelines range. "The district court 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance,' and 'a major departure should be supported by a more significant justification than a minor one.'" *Bostic*, 970 F.3d at 612 (quoting *Gall*, 552 U.S. at 50). "Such a sentence requires an explanation commensurate in thoroughness." *Id.* (citation omitted).

12

Because of the district court's "dramatic deviation without commensurate explanation," the district court procedurally erred. *Id.*

Accordingly, this Court should vacate Lerma's sentence and remand for resentencing.

**B.  Considering the totality of the circumstances, the district court abused its discretion by imposing a substantively unreasonable sentence.**

### 1.    Standard of review

This Court considers the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. An above-Guidelines sentence is substantively unreasonable "where it '(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.'" *United States v. Churchwell*, 807 F.3d 107, 123 (5th Cir. 2015) (quoting *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006)).

When a district court imposes a variant sentence, the reviewing court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552

U.S. at 51. A substantial variance "should be supported by a more significant justification than a minor one." *Id*. at 50.

### 2.  Discussion

The statutory maximum sentence of 60 months, a 757% increase from the middle of the Guidelines range, is substantively unreasonable because it does not account for unwarranted sentence disparities. This factor should have received significant weight and represents a clear error of judgment in balancing the sentencing factors.

To begin with, the district court overlooked the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Rather than comparing the facts here to similar defendants, the court used the statutory maximum for the conviction—60 months—as a reference point for the sentence it imposed. ROA.74; 18 U.S.C. § 751(a).

"But the maximum allowable sentence is not intended to be a barometer for the reasonableness of sentences imposed." *United States v. Perez-Rodriguez*, 960 F.3d 748, 756 (6th Cir. 2020). "While the statutory maximum eliminates any risk of disparity caused by sentences above the maximum term, that maximum does little to diminish disparities for

14

individuals who receive (or should receive) sentences below the maximum term." *Id.* (cleaned up). "Unlike the Guidelines range, which is the proper starting point, the statutory maximum does not account for all the potential differences among defendants convicted of the same crime, and cannot be used to fashion individualized, fact-driven sentences." *Id.* (cleaned up).

In short, "sentencing data released by the Sentencing Commission should serve as a starting point for district judges to avoid unwarranted sentence disparities." *Id.* (cleaned up). Here, Commission data show that Lerma's case is less serious than the average escape case in which the average offender has eleven criminal history points, which falls into criminal history category V.[1] Despite the "extensive and serious" criminal backgrounds of most escape offenders, the average prison sentence for such offenders is only 12 months, with a mere 2.8% of them receiving sentences exceeding the recommended guidelines.[2]

---

[1]    *See* U.S. Sentencing Comm'n, *Federal Escape Offenses* at 8 (Sept. 2023) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2023/202309_Escape.pdf   Please also refer to the "Request for Judicial Notice," asking this Court to judicially notice this document, which was filed at the same time as this opening brief.
[2] U.S. Sentencing Comm'n, *supra* note 1, at 3.

Beginning with the correct standard—the Guidelines range—and comparing the details of this case with Commission data and considering the factors outlined in § 3553(a), it becomes apparent that Lerma's sentence represents an unwarranted sentencing disparity. Notably, Lerma's criminal history category of III is lower than the category V typically seen in most escape cases, where the average sentence is just 12 months. Although Lerma had a less extensive criminal history than an average escape offender, he was sentenced to a term five times longer than the average escape offender receives.

Additionally, the district court's stated justifications during sentencing fail to meet the high bar for such a substantial deviation. The district court based its variance on Lerma's "three terms of supervised release, none of which he successfully completed," and Lerma's theft and escape. ROA.74-75. The district court also considered "Lerma's criminal history, which is way underrepresented by the category. . . ." ROA.74.

To be sure, Lerma's prior convictions for minor in possession, public intoxication, driving with a suspended license, driving while intoxicated, evading arrest, possession of marijuana, and possession of drug paraphernalia did not receive criminal history points because they were

too old. ROA.85-88 (PSR ¶¶ 21-34). But these uncounted offenses were misdemeanors, and none were violent. ROA.85-88 (PSR ¶¶ 21-34). The most common penalty for these misdemeanors was a fine; the longest sentences were only for 90 days. ROA.85-88 (PSR ¶¶ 21-34).

There was thus no rational basis for the court to increase Lerma's sentence to the statutory maximum of 60 months based on his 14 misdemeanor convictions that were too old to be counted for criminal history purposes. *Cf.* U.S.S.G. § 4A1.3(a)(2)(B) (district court may rely on "[p]rior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions" to make an upward departure); *see also United States v. Rodriguez-Castro*, No. 23-10120, 2023 WL 6444773, at *1 (5th Cir. Oct. 3, 2023) (per curiam) (affirming upward variance based on, among other factors, the defendant's "prior conviction for family violence assault and his numerous prior illegal reentries").

When the district court stated that "Lerma's criminal history [was] way underrepresented by the category," ROA.74, it is also possible that the district court was referring to Lerma's juvenile adjudication in 1993. ROA.84-85 (PSR ¶¶ 50). But it has been thirty years since that incident,

and it did not result in a conviction as an adult. ROA.84-85 (PSR ¶¶ 50). Additionally, the 1993 incident is not even similar to the instant offense. ROA.84-85 (PSR ¶¶ 50). The fact that the 1993 incident involved juvenile, not adult, proceedings, and its dissimilarity to the instant offense means it should not provide a basis for the court to vary upward. *Cf.* U.S.S.G. § 4A1.3(a)(2)(E) (district court may rely on "information concerning . . . [p]rior similar adult criminal conduct not resulting in a criminal conviction" to make an upward departure).

Finally, according to the Statement of Reasons form, the district court based its upward variance solely on "extreme conduct" associated with the instant offense but provided no details supporting this conclusion. ROA.103. "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. In other words, extreme conduct is conduct that is "unusually heinous, cruel, brutal, or degrading to the victim." U.S.S.G. § 5K2.8.

Here, the instant offense involved trespass and the theft of a $200 cell phone. ROA.83 (PSR ¶¶ 5-6). While illegal, such conduct hardly amounts to "extreme conduct" that is "unusually heinous, cruel, brutal,

18

or degrading to the victim." Accordingly, the Statement of Reasons form does not support the upward variance either.

Considering the totality of the circumstances, including the extent of the significant upward variance from the Guidelines range, and giving due deference to the district court's decision that the § 3553(a) factors justify the extent of the variance, the district court abused its discretion by imposing a statutory maximum sentence of 60 months, a 757% increase from the middle of the Guidelines range.

Accordingly, this Court should vacate Lerma's sentence and remand for resentencing.

## II. The district court plainly erred by failing to apply a seven-level reduction for voluntary return under U.S.S.G. § 2P1.1(b)(2).

### A.    Standard of review

Lerma did not argue in the district court that he should receive a seven-level reduction for voluntary return under U.S.S.G. § 2P1.1(b)(2). Thus, this Court reviews the issue for plain error. *United States v. Blanco*, 27 F.4th 375, 380 (5th Cir. 2022) (citing *United States v. Johnson*, 943 F.3d 735, 737 (5th Cir. 2019)). To prevail, Lerma "must show a forfeited error that is clear or obvious and that affects his substantial

rights." *Id*. (quoting *Johnson*, 943 F.3d at 737). Even if Lerma makes the requisite showing, this Court may exercise its discretion to correct the error "only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. (quoting *Johnson*, 943 F.3d at 737).

Regardless of the ultimate sentence, an error in calculating the Guidelines range "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) Concerning the "fairness and integrity" portion of plain error review, the Supreme Court has made clear that the "risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error." *Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018).

## B.    Discussion

The seven-level reduction for voluntary return under § 2P1.1(b)(2) applies "[i]f the defendant escaped from non-secure custody and returned

voluntarily within ninety-six hours . . . ." U.S.S.G. § 2P1.1(b)(2). Here,

the factual basis reveals that although Lerma jumped over the exterior

fence and left Dismas Charities on July 21, 2023, he voluntarily came

back to the facility on the same day:

> On July 21, 2023, at approximately 10:30 AM, while
> Residential Reentry (RCC) Staff were completing a head
> count at Dismas Charities, staff observed inmate Charles Ray
> LERMA was not present in his assigned bunk. A search of the
> facility was conducted. Staff confirmed that LERMA was no
> longer on the premises of Dismas Charities. RRC staff
> reviewed cameras and observed LERMA had jumped the
> exterior fence and departed the property on July 21, 2023, at
> about 9:09 AM.

> \*     \*     \*

> Later in the day on July 21, 2023, local law enforcement
> (Midland County Sheriff's Office) arrived at the RRC (Dismas
> Charities), where they located LERMA attempting the re-
> enter the facility. LERMA was subsequently taken into
> custody and transported to the Midland County Sheriff's
> Office Detention Center.

> ROA.116-17.

Because he voluntarily returned to Dismas Charities on the same day that he escaped, he should have received the seven-level reduction in § 2P1.1(b)(2).[3]

The next question is whether the error was clear or obvious. *Blanco*, 27 F.4th at 380 (quoting *Johnson*, 943 F.3d at 737). "[A]ny error that can be identified purely by an uncomplicated resort to the language of the guidelines is plain." *United States v. Torres*, 856 F.3d 1095, 1099 (5th Cir. 2017). Here, "a straightforward application of the [G]uidelines" reveals that the district court's error in not applying a seven-level reduction for voluntary return under § 2P1.1(b)(2) was clear and obvious. *Id.* (footnote omitted).

The error also affects Lerma's substantial rights. The substantial rights prong of this Court's plain error review requires the appellant to "show a reasonable probability, that but for the error, the outcome of the proceeding would have been different." *Blanco,* 27 F.4th at 380-81

---

[3] A reduction under § 2P1.1(b)(2) does "not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more." U.S.S.G. § 2P1.1(b)(2). But the probation office implicitly concluded that this provision was inapplicable because U.S.S.G. § 2P1.1(b)(3) contains the same provision, and the probation office applied the reduction for an escape from a community-based facility under § 2P1.1(b)(3). ROA.84 (PSR ¶ 12).

(quoting *Molina-Martinez,* 578 U.S. at 194 (internal quotation marks and citation omitted)). The district court's reliance on an incorrect Guidelines range will usually suffice to show an effect on the defendant's substantial rights where "the record is silent as to what the district court might have done had it considered the correct Guidelines range." *Id.* at 380-81 (quoting *Molina-Martinez*, 578 U.S. at 201). "Even if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence." Id.* at 381 (quoting *Molina-Martinez*, 578 U.S. at 199) (internal quotation marks and citations omitted)).

Had Lerma's PSR been calculated correctly, his total offense level would have been four rather than seven, as originally assessed. *See* U.S.S.G. §§ 2P1.1(a)(1), 2P1.1(b)(2) and 3E1.1(a). A total offense level of four combined with a criminal history category of III would have produced a Guidelines range of zero to 6 months rather than the four to 10 months the district court calculated. U.S.S.G. ch. 5 pt. A. The record further reflects that the district court's reliance on the Guidelines as a basis for his sentence—although it ultimately departed from them—

shows a reasonable probability that his sentence would have been different. *See Molina-Martinez*, 578 U.S. at 194. As a result, the error was prejudicial to Lerma.

In sum, the district court sentenced Lerma using an incorrect Guidelines' range as its starting point for an upward departure. The "risk of unnecessary deprivation of liberty" to Lerma based on an incorrect Guidelines calculation undermines the fairness of the proceedings. *Rosales-Mireles*, 585 U.S. at 140. A "reasonable citizen" would rightly bear a "diminished view of the judicial process . . . if courts refused to correct obvious errors . . . that threaten to require individuals to linger longer in federal prison than the law demands . . . ." *Id.* (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014) (Gorsuch, J.)). Because the district court's error seriously affects the fairness, integrity, and public reputation of the judicial proceedings, this Court should exercise its discretion to cure the error.

Accordingly, this Court should vacate Lerma's sentence and remand for resentencing.

24

## Conclusion

This Court should vacate Lerma's sentence and remand for resentencing.

Respectfully submitted,
/s/ Nelson S. Ebaugh
Nelson S. Ebaugh
Nelson S. Ebaugh P.C.
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
(713) 752-0700

*Counsel for Defendant-Appellant*

## Certificate of Service

I certify that, on April 23, 2024, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

<u>/s/ Nelson S. Ebaugh</u>
Nelson S. Ebaugh

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,190 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word software in Century Schoolbook 14-point font in text and Century Schoolbook 12-point font in footnotes.

/s/ Nelson S. Ebaugh
Nelson S. Ebaugh